Gustaf Birch, as Administrator of the Estate of Emil Birch, Deceased, Respondent, *v.* The City of New York, Appellant.

1. Municipal Corporations — Private Property Purchased for Public Purposes — When Municipality Not Required to Improve Such Property — Rule of Liability with Respect to Care and Maintenance Thereof. A municipality which acquires property for public purposes is not bound to improve it at once, in the absence of any statutory requirement to that effect, or to exercise a degree of care in its maintenance before its improvement beyond that which is chargeable to a private owner of property similarly situated.

2. Same — New York (City of) — Old Pier Purchased for Park Purposes — When Not Liable in Negligence For Accident Thereon Before Dedication to Public Use. Where the city of New York acquired for park purposes a pier which had not been open to public use and permitted it to remain in a dilapidated condition, it is not liable in damages for the death of a person who disembarked thereon and fell through a hole therein, before the pier had been improved and dedicated to the use for which it was acquired.

3. Same — Measure of Obligation to Bare Licensees. As to such property the city is under no obligation to bare licensees either to make it safe or keep it in any particular condition.

*Birch* v. *City of New York*, 121 App. Div. 395, reversed.

(Argued December 11, 1907; decided December 20, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 4, 1907, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis K. Pendleton, Corporation Counsel* (*James D. Bell* of counsel), for appellant.    The plaintiff failed to show any negligence or other failure of duty toward the intestate on the part of the defendant, and the order of the Appellate Division, reversing the judgment entered upon the nonsuit at Trial Term, was, therefore, erroneous.    (*Gluck* v. *R. I. Co.*, 31 N. Y. S. R. 99 ; 125 N. Y. 728 ; *O. S. N. Co.* v. *Compania, etc.*, 134 N. Y. 461 ; *Delaney* v. *P. R. R. Co.*, 78 Hun, 393 ; 144 N. Y. 718 ; *Kennedy* v. *Mayor, etc.*, 73 N. Y. 365 ; *Macauley* v. *Mayor, etc.*, 67 N.Y. 602 ; *McGuinness* v. *Mayor, etc.*, 52 How. Pr. 450 ; *Larmore* v. *C. P. I. Co.*, 101 N. Y. 391 ; *Wendell* v. *Baxter*, 12 Gray, 494 ; *Pittsburg* v. *Greer*, 52 Penn. St. 54 ; *Malloy* v. *S. I. R. R. Co.*, 78 Hun, 166.)

*Isaac M. Kapper* and *Thomas E. Pearsall* for respondent. This dock or pier was not only public property, but was just as much a public way as any park land or park paths to which people resort for pleasure, besides having a business use such as any ordinary dock or pier would have, with the limitation only that when used by business vehicles a permit of the park department had to be first obtained as is the case with all park boulevards and park properties, the use of which is restricted to pleasure vehicles in order to drive over the shore road itself.    The defendant's predecessor, the county of Kings, did not acquire this property for private purposes or private uses, but acquired it for public purposes and uses.    (*Darlington* v. *City of Brooklyn*, 31 Hun, 122 ; S. & R. on Neg. [4th ed.] § 254 ; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 272.)    This pier or dock was a pier or dock duly designated upon the plan of the improvement within the meaning of the act under

which it was acquired, chapter 758 of the Laws of 1894, and the right of the public to go upon it and use it was the same as in the case of any public way. (*Gluck* v. *R. I. Co.*, 31 N. Y. S. R. 99 ; *O. S. N. Co.* v. *Compania, etc.*, 134 N. Y. 465 ; *Delaney* v. *P. R. R. Co.*, 78 Hun, 393 ; *Kennedy* v. *Mayor, etc.*, 73 N. Y. 365 ; *Macauley* v. *Mayor, etc.*, 67 N. Y. 602 ; *McGuinness* v. *Mayor, etc.*, 52 How. Pr. 450.) If a municipal corporation permits a place to be used for public travel that place becomes a public way and for defects therein the municipality is liable. This is so whether the municipality has constructed or erected the way or whether it has by lapse of time and by acquiescence accepted the structure as its own. (*Saulsbury* v. *Vil. of Ithaca*, 94 N. Y. 30 ; *Hiller* v. *Vil. of Sharon Springs*, 28 Hun, 344 ; *Avery* v. *City of Syracuse*, 29 Hun, 537 ; *Robertson* v. *Mayor, etc.*, 7 Misc. Rep. 645 ; *McVee* v. *City of Watertown*, 92 Hun, 309 ; *Dennis* v. *Vil. of Elmira Heights*, 59 App. Div. 404 ; *Schomer* v. *City of Rochester*, 15 Abb. [N. C.] 57 ; *Brusso* v. *City of Buffalo*, 90 N. Y. 679.)

WERNER, J. This action was brought to recover damages for the death of plaintiff's intestate, which is alleged to have been caused by the negligence of the defendant. The record discloses that on the 26th day of July, 1903, the intestate, a lad of about seventeen years of age, was one of a pleasure party who went for a sail on the tugboat of one Captain Wilson. The party embarked in rowboats at the shore in the vicinity of Ninety-fifth street in the borough of Brooklyn, and proceeded to the tug which was anchored at some distance out in the East river. After a sail of several hours' duration the party returned to the starting point at about nine o'clock in the evening. At this time it was quite dark and the water had become so rough that the captain deemed it inadvisable to permit his passengers to disembark into rowboats and decided to run the tug to a pier situate between Second avenue and Ninety-fifth street. After the tug had been made fast at a tiepost plaintiff's intestate stepped upon the pier,

advanced a further pace or two, and then disappeared from sight. Subsequent investigation disclosed a hole at that point in the plank floor of the pier about $2\frac{1}{2}$ to 3 feet in width and from 5 to 6 feet in length. The evidence as to the accident while extremely meagre in detail, conclusively establishes the death of the intestate by drowning, under circumstances which preclude the possibility of holding as matter of law that the intestate was guilty of contributory negligence.

The plaintiff's case has proceeded upon the theory that the pier in question was a public place owned and controlled by the defendant, and that the failure to keep it in a reasonably safe condition for use by the public was culpable negligence for which the defendant must be held liable. The theory of the defense is that, although this pier was the property of the defendant, it was not a public place and that the defendant owed the plaintiff's intestate no other or greater duty than that which any private owner of property owes to a mere licensee.

The evidence bearing upon these contentions tends to show that prior to 1895 the premises which embrace the *locus in quo* had been owned by one Lane. The pier in question had been in existence during Lane's ownership at least as early as 1889, and probably much longer. The record discloses that prior to 1895 the pier had been used by many persons for swimming and fishing; that several garbage scows had loaded or unloaded there on various occasions, and that the witness Wilson had tied up his tug there at different times. This pier extended into the river for a distance of about one hundred and eighty feet, and was connected at the shore end with a dock running parallel with the shore for several hundred feet. From this dock, and at a point about midway between Second avenue and 95th street, there was a winding road or pathway about sixteen feet in width to a street called the Shore driveway. There is no evidence that during Lane's ownership either the pier or pathway had ever been used for public purposes, and such testimony as the record contains tends rather to support the inference that they had always been used as private property.

In 1894 the legislature passed an act authorizing the creation and maintenance of certain parks, pleasure drives, etc., in cities containing a population in excess of 800,000. Following the passage of this act, the city of Brooklyn acquired title to the property in question and turned it over to the department of parks, which authorized the making and filing of the map set forth in the record. Upon the subsequent creation of the greater city of New York, the park department of that municipality assumed jurisdiction and control of the lands referred to, including the pier in question. The street known as the Shore drive was thereafter improved, widened and provided with sidewalks and curbs which contained no openings for communication with the sixteen-foot pathway that runs from the top of the bluff to the pier. Neither the defendant nor its predecessor in title, the city of Brooklyn, have ever made any repairs upon this pier, and it is undisputed that for many years prior to the day of the accident it had been in a state of decay which rendered it unsafe. After the city of Brooklyn acquired title thereto, the pier was used as it had been before. Various persons went to it for bathing and fishing, and several contractors used it for unloading cargoes of brick and building materials which were drawn from the pier by teams under a special permit for that purpose from the park authorities. In 1903, while this latter use was being made of the pier, it was in such a dilapidated condition that planks had to be laid upon the surface thereof to make it passable for horses and wagons, but in that connection it also appears that the sixteen-foot pathway referred to was then so steep and rugged that the contractors found it impracticable until they had changed the grade and otherwise improved it for their own purposes.

At the Trial Term, the learned court granted a nonsuit upon the theory that this pier, although owned by a municipality, was not a public place to which the public had been expressly or impliedly invited, and that the defendant was under no greater obligation to those who assumed to use it than an individual owner or occupier would have been to a mere licensee. At the Appellate Division the opinion prevailed

26

that the plaintiff had proven enough to make it a question of fact for a jury whether the defendant had by implication or acquiescence invited the public to use this pier and, therefore, the judgment entered upon the nonsuit was reversed and a new trial granted.

The issue is extremely narrow and not free from doubt, but we are inclined to the view that the court at Trial Term was right and that the judgment upon the nonsuit should be sustained. We think it would be imposing upon municipalities altogether too harsh a rule of liability to hold that private property acquired by them for public purposes must be treated as thrown open to the use of the public from the moment of its acquisition, without regard to the character of the changes or improvements that may be contemplated in fitting it for future public use. This was private property up to the moment that it was acquired by the city. Although it was to be devoted to public use in that it was embraced in the plans for the city's park system, the precise character of its improvement and the exact nature and extent of its use do not appear to have been definitely determined at the time of the intestate's death. It is true that eight years had elapsed between the time of its acquisition by the city and the tragic ending of this young man's life, and that during this interval the pier might have been improved or removed. But these are considerations with which we have no concern in a case of this character, unless we are prepared to hold as a matter of law that a municipality which acquires property for public purposes is bound either to improve it at once, or to exercise a degree of care in its maintenance before its improvement, beyond that which is chargeable to a private owner of property similarly situated. It is too plain for discussion that neither individuals nor courts have any right or power to demand or direct how or when public improvements shall be made, except where such right or power are conferred by statute or other legal authority. It seems equally plain to us that there is no valid reason why a municipality should be held to a different rule of liability for its alleged negligence than an

individual owner with respect to the care and maintenance of property which, although acquired for a definite public use, has not yet been improved for that purpose and is used, if at all, by mere sufferance.

This is not a case where the pier was a part of the highways of the city, or one of its public places, as in *Oceanic Steam Nav. Co.* v. *Compania T. E.* (134 N. Y. 465); *Delaney* v. *Penn. R. R. Co.* (144 N. Y. 718), and other similar cases. Neither was it a place which the city permitted to be used as a highway for public travel, as in *Saulsbury* v. *Village of Ithaca* (94 N. Y. 30) or *Brusso* v. *City of Buffalo* (90 N. Y. 679). This was private property, although owned by the city and held for a public purpose, and that private character continued until it was actually devoted to the public use for which it was purchased, unless the city either invited or permitted a use of it that was public in its nature. Swimming and fishing are not, strictly speaking, pier uses at all, and certainly not uses which could convert a private pier into a public one. Nor was the use of the pier for the loading and unloading of contractors' building materials, under express permission of the park authorities, inconsistent with its private character. Neither were the other occasional and incidental uses to which, according to the evidence it may have been devoted, such as to support the conclusion that it was in any sense a place to which the public had been impliedly or expressly invited.

We think, therefore, that this case falls within the rule succinctly expressed in Thompson on Negligence (Vol. 1, § 945) as follows: "The owner or occupier of real property is under no obligation to make it safe, or to keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it without his invitation, express or implied." There are many cases which illustrate and support this rule, but we shall only refer to a few. In *Larmore* v. *Crown Point Iron Co.* (101 N. Y. 393) the plaintiff had gone upon the premises of the defendant to apply for work. He had been engaged to commence work on the fol-

lowing Monday. He lingered in close proximity to a machine then in operation, and was hit by a lever which, upon subsequent examination, turned out to be broken or defective. It was held that since the plaintiff was upon the premises by the mere implied sufferance or license of the defendant, and not upon its invitation, express or implied, defendant owed him no affirmative duty to ascertain and remedy defects developed by use in a machine originally suitable, and which might have been discovered by proper inspection.

In *Sterger* v. *Van Sicklen* (132 N. Y. 499) the defendant owned a building with back steps which were in a decayed condition. The plaintiff, a person living in a neighboring house, crossed the intervening back yard through an opening in the fence, and went upon these defective steps where she was injured. This court, in deciding that the plaintiff was not entitled to recover, quoted the rule as laid down by Mr. Pollock in his work on Torts, as follows: " Persons who by the mere gratuitous permission of owners or occupiers take a short cut across a waste piece of land, or pass over private bridges, or have the run of a building, cannot expect to find the land free from holes or ditches or the bridges to be in safe repair, or the passages and stairs to be commodious and free from dangerous places."

To the same effect is *Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301) where the defendant maintained a turntable in a vacant lot over which the public were accustomed to travel. The plaintiff, a small child, in company with other children, came upon the lot and was injured in playing with the turntable. In expressing the view of this court that the plaintiff was not entitled to recover, Judge Peckham said: " The plaintiff was not on the land by invitation of the defendant, nor in its business, but for his own purposes totally disconnected with the defendant's business. He was not a trespasser in the sense of his being unlawfully upon the premises, because the defendant by its course of conduct had impliedly granted a license to the public to use the land for the purpose above mentioned. This license, of course, could at any time have

been revoked, and then any one going upon the land would have been a trespasser. * * * The defendant had no right intentionally to injure him, and it would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience."

The order of the Appellate Division should be reversed and the judgment entered upon the nonsuit should be affirmed, with costs in both courts.

EDWARD T. BARTLETT, J. (dissenting). I am of the opinion that the Appellate Division properly reversed the judgment of nonsuit and ordered a new trial, for the following reasons:

(1) The defendant had for many years allowed this pier to remain in a dilapidated condition, and for a considerable period of time permitted the existence of what may be regarded as nothing less than a "trap" for the unwary in the form of an opening in the floor or deck of the pier two and one-half to three feet wide and five to six feet in length, over deep water, into which the deceased fell and was drowned, while passing over the place of a dark night.

(2) There was sufficient evidence to be submitted to the jury, as was pointed out in the opinion of the Appellate Division, as follows: "It was used constantly and openly by parties fishing and swimming or enjoying pleasure excursions; and it was also used occasionally by contractors in landing materials under permit from the city authorities. The evidence is ample to justify a jury in concluding that a tragedy such as has occurred was reasonably to be expected."

CULLEN, Ch. J., GRAY, HAIGHT, WILLARD BARTLETT and HISCOCK, JJ., concur with WERNER, J.; EDWARD T. BARTLETT, J., reads dissenting memorandum.

Ordered accordingly.