VAHAN BASMAJIAN, as Administrator, etc., of ASHOD BASMAJIAN, Deceased, Respondent, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

First Department, January 9, 1925.

Negligence — action to recover for death of plaintiff's intestate — intestate, student of public school, while truant, entered school playground and climbed to top of screen inclosure used to protect stairway — intestate fell through hole in top of screen — intestate had been warned not to climb on screen — intestate was trespasser at time of accident — defendant owed no duty to intestate to keep screen in repair — intestate was guilty of contributory negligence.

The defendant is not liable for the death of the plaintiff's intestate, who, while a student of a public school in the defendant city, and while a truant from his school, entered the school playground and climbed to the top of a wire screening, which was seven and one-half feet above the surface of the school yard, was erected for the protection of a stairway, and fell through an opening in the screen and was killed, for, at the time of the accident, plaintiff's intestate was a trespasser on the school grounds to whom the defendant owed no duty of

active vigilance, and furthermore, the intestate had been warned not to climb upon the screen and the evidence discloses that he was guilty of negligence contributing to the injury which resulted in his death.

APPEAL by the defendant, The Board of Education of the City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of March, 1924, upon the verdict of a jury for $2,500, and also from an order entered in said clerk's office on the 3d day of March, 1924, denying the defendant's motion for a new trial made upon the minutes.

*George P. Nicholson*, Corporation Counsel [*Willard S. Allen* of counsel; *John F. O'Brien* and *Charles C. Marrin* with him on the brief], for the appellant.

*Dicran Simsarian* [*Edward P. Sobel* of counsel; *John W. Goff, Jr.*, with him on the brief], for the respondent.

BURR, J.:

The action was brought to recover damages for the death of plaintiff's intestate. The jury rendered a verdict in favor of the plaintiff and against the defendant for the sum of $2,500.

It is alleged in the complaint that on or about October 4, 1920, Ashod Basmajian, a student of Public School No. 4, at One Hundred and Seventy-third street and Fulton avenue, borough of The Bronx, " was lawfully playing in the playground of said school." " That at the times herein mentioned, the defendant, its servants and janitor, failed and neglected to cover, properly, the stone stairs and stairway leading from the rear playground to the basement of said Public School No. 4 and neglected and recklessly permitted the same to be out of repair, unsafe and dangerous to students playing in the playground of said school. The wire coverings over said stairway and stairs were made of unsuitable material and in an improper manner. The said covering was so improperly made, located and dangerously and negligently maintained, that the same constituted a nuisance dangerous to the life and health of the children playing in said playground. The appearance, form, location, material and manner of maintenance of said wire covering was calculated to and did attract children to play on and about the same, thereby endangering their lives and limbs. That said dangerous condition was well known to defendant who unlawfully permitted it so to exist and continue * * * That by reason of the foregoing facts, on or about October 4th, 1920, while Ashod Basmajian was lawfully playing in said playground, he fell through said wire covering and was killed."

It is further alleged in the complaint that the death of plaintiff's

intestate was caused "solely by reason of the negligence of the defendant, and its servants."

These allegations are put in issue by the defendant, and further defendant as an affirmative defense alleges that whatever damages may have been sustained at the time, place and manner set forth in the complaint, were sustained solely through the carelessness and negligence of plaintiff's intestate or through the acts or omissions of third persons over whom the defendant had no control, and not by reason of any carelessness on the part of the defendant, its agents, servants or employees.

The plaintiff's intestate was a healthy, intelligent boy, nine years, ten months and two days old. On October 4, 1920, there stood at the intersection of One Hundred and Seventy-third street and Fulton avenue in the borough of The Bronx, a school building known as Public School No. 4, which was under the maintenance and control of the defendant. Attached to it, and forming a part of the school premises, there was a school yard or outside playground. One means of access to that yard or playground was through iron gates which formed part of a railing which separated that yard from the sidewalk on Fulton avenue.

The deceased was an enrolled or registered pupil of that school, but he was registered absent on October 4, 1920. October 4, 1920, was not a legal holiday. The school was open and there was school there all that day. The day was a Jewish religious holiday. The pupils had been told by their principal and teachers that all those who were of the Jewish faith were not required to attend school that day. Of the 2,800 pupils enrolled or registered in the school, about 2,400 were of the Jewish faith, and they were absent that day.

The deceased was not a Hebrew. The day was not one observed as a religious holiday in his family because his father, upon leaving the house that morning, told the deceased to go to school. On coming out of his house that morning the deceased met Hrant Sarajian, a fellow pupil, likewise not a Hebrew, and they went to a candy store and then to the school premises, where they arrived about half past nine. They did not proceed to their classroom inside the school building as they should have done, but they went into the school yard where about fourteen boys were playing basketball.

By putting their fingers through the wire mesh, the deceased and plaintiff's witness, Hrant Sarajian, climbed on top of a wire mesh structure that was erected up against one of the walls of the school building in the school yard. The structure surrounded and covered a stairway that led down to that part of the basement that was used for toilet purposes for the girls. The structure is

First Department, January, 1925.    [Vol. 211

constructed of regulation wire mesh, a quarter-inch square, and it is on a cage which is used for that type of structure and is similar to others of the same kind in the public schools of the city. It is reinforced by angle-irons at the corners, and at intervals of about four or five feet by T-irons, made in the shape of the letter " T," and is also reinforced in the same way across the top. The purpose of the exposed side and ends of the structure was to protect the children playing in the yard from running or falling into the areaway from the surface of the yard. The top of the structure is seven feet six inches above the surface of the yard pavement. The wire mesh on top of the structure was placed there for the purpose of protecting the girls while using the stairway from injury by being struck by any object falling from the roof or windows or thrown by the boys while playing in the yard.

It does not appear how long the deceased and the Sarajian boy had been on top of the structure before the accident occurred. However, it does appear that the Sarajian boy got down and then the deceased threw his hat down and he asked the Sarajian boy to throw it up to him, which he did; and that while the deceased was on his way to the hat, he fell through a hole in the top of the wire mesh structure that was about a foot and a half in circumference and about four feet in from the edge, and sustained injuries from which he died. A hole had been in the top of this wire mesh from two weeks to two and a half months before the happening of the accident. The boys had previously been warned by the principal of the school not to go on top of the wire mesh structure.

The defendant city, at the close of the case, moved to dismiss the complaint on the ground that the plaintiff had failed to show acts sufficient to constitute a cause of action, had failed to prove any act of negligence against the city of New York, and had failed to prove an action of any kind against the city; also upon the ground that the affirmative testimony shows conclusively that plaintiff's intestate was guilty of contributory negligence resulting in the injuries which caused his death. The motion was denied and defendant excepted. At the close of the whole case defendant renewed its motions to dismiss the complaint and also for a direction of a verdict for defendant. This motion was denied and defendant excepted.

No claim was made by plaintiff on the trial that the wire mesh structure was improperly constructed. The only claim made by plaintiff was that the defendant was guilty of negligence in permitting a hole to remain in the top of the wire mesh structure after notice of its existence.

The defendant might have owed a duty to the girls and other

persons using the stairway to see that there was no hole in the top of the wire mesh covering through which falling objects might come and injure them; but it owed the plaintiff no such duty, nor did it owe him the duty to have any covering at all on top of the structure. The defendant performed its full obligation to plaintiff's intestate by having the side and ends of the stairway and areaway inclosed. The top of the structure bore no indication that it was designed for general use, and furnished no invitation to the pupils in the yard any more " than the roof of a stoop or piazza, which projects under the window of a dwelling-house, and is easy of access to persons in the vicinity," as stated by the Court of Appeals in *McAlpin* v. *Powell* (70 N. Y. 126, 131). In climbing on top of the structure, which was seven and a half feet above the surface of the school yard pavement, the plaintiff's intestate went where he had no right to go, and was there for no legitimate purpose. The facts in the case at bar are clearly distinguishable from those in the case of *Jaked* v. *Board of Education* (198 App. Div. 113; affd., 234 N. Y. 591), relied upon by respondent. In that case plaintiff, a girl seven years of age, on November 22, 1918, was attending School No. 1 on Bassett street in the city of Albany. The school building is erected immediately upon the street line. The main entrance to the schoolhouse, intended for the use of teachers and visitors to the school, is on Bassett street. There is a vestibule, the floor of which is on the level with the street, extending several feet deep, from the rear of which floor are a number of steps leading up to the front door of the building. At the entrance to this vestibule are two large iron swinging gates, which when closed protect this vestibule. These gates are attached to hinges, which are attached to the outer walls to the building on either side of the entrance. These gates swing inward. In the wall back of one of these gates, when open, is an iron bar set in the wall, extending out some twelve or fourteen inches, so fashioned that by means of a padlock this gate may be fastened open. On November 22, 1918, there was no such bar in back of the other gate, but in a corresponding place in the wall back of this gate is a hole in which it is inferred that at some time a similar bar had been placed. At noontime on November 22, 1918, this plaintiff, with an older sister and some others, went to this main entrance, and she, with four or five others, was swinging upon the gate which was not equipped with a fastening device. She was on the inside or back side of the gate. One or two boys pushed the gate back towards the wall. Plaintiff, standing on the gate and evidently intending to hold the gate from reaching the wall, extended her leg back against the wall and her leg was broken above the ankle. For about a

First Department, January, 1925.          [Vol. 211

year prior to the accident there had been no means of fastening this gate when open, and scholars had been accustomed to swing on the gate.

In the present case the plaintiff's intestate was not attending school on the day of the accident, but was a truant from school. He entered the school yard at about half past nine that morning, not by invitation, express or implied, but on the contrary in disobedience of the orders and directions of the principal of the school not to come into the school yard when not attending school. Upon entering the school yard that morning he climbed up on top of the wire mesh structure in disobedience of the warnings of the principal.

It is clear that the gate in question in the *Jaked Case* (*supra*) was an attractive nuisance, while the structure in question in the present case was not.

In *Sackheim* v. *Pigueron* (215 N. Y. 62) Judge HOGAN, in discussing the application of section 841-b of the Code of Civil Procedure (as added by Laws of 1913, chap. 228), relating to the trial and burden of proof of contributory negligence, the language of which section is the same as that contained in section 265 of the Civil Practice Act, said (p. 75): " It is still essential to a recovery in a death case that the proximate cause of an injury resulting in death be due to the negligence of the party defendant causing the injury. Upon the trial of such action, if the evidence offered on behalf of the plaintiff discloses that the deceased was guilty of negligence contributing to the injury which resulted in death, a failure of proof would exist. The defendant would not be obliged to offer evidence but might rely upon the evidence so presented by the plaintiff. If the evidence of the plaintiff does not as a matter of law disclose that the deceased was guilty of negligence contributing to the accident, the Legislature has prescribed that the burden of proof shall be upon the defendant to establish that the deceased was guilty of negligence contributing to the accident; thus placing upon a defendant the burden of proof where before the burden was imposed upon the plaintiff and required to be sustained in the first instance. Such change in order of proof does not operate to permit a plaintiff to recover in an action for death resulting from an accident unless the proximate cause of the accident was the negligence of the defendant."

Hrant Sarajian, plaintiff's witness, testified on direct examination that after he and the Basmajian boy got to the playground they both went up on the screen which was over the stairs to the basement and up against the school building; that then the witness got down and the Basmajian boy dropped or threw down his hat and told the witness to get it and throw it up to him, and the

witness did so, and that the deceased on his way to the hat went through the hole in the screen, fell through; that the top of the screen was made of wire netting like a cage; that the hole was about four feet from the edge and big enough for a man to go through, about a foot and a half all around. On cross-examination he further testified that he and all the other boys were told all the time not to go up there, and that he and the deceased had been up there before several times.

This evidence, introduced on behalf of the plaintiff, discloses that plaintiff's intestate was guilty of negligence contributing to the injury which resulted in death, and, therefore, bars a recovery in this action.

In *Guichard* v. *New* (9 App. Div. 485) the plaintiff at the time the accident happened was a boy eight years of age, who regularly attended a public school in the city of New York, who studied arithmetic, reading, writing and spelling, and who was in the habit of playing in the city streets every day, and had been warned by an operator of an elevator not to put his head over the elevator gate. Mr. Justice PATTERSON, writing for an unanimous court, reversing the judgment for plaintiff, said (at p. 487): " The case is, therefore, presented of a boy attending school, playing in the streets, distinctly warned not to do a particular act; and that if he does injury will ensue, yet doing that act with full knowledge and despite the warning he has received. We think the case is one which did not require the submission to the jury of any question as to the ability of the plaintiff to exercise ordinary care and prudence under the circumstances, for he was old enough and intelligent enough to understand that the act he was warned against was one which would involve him in a peril, and having done that which he was distinctly warned not to do, the consequence of his folly must be visited upon him, precisely as in any other case."

It is well settled that where a person voluntarily exposes himself to danger and is injured, there is no rule of law which authorizes a recovery. (*McAlpin* v. *Powell, supra; Strobel* v. *Liebmann*, 197 N. Y. 348, 352.)

Plaintiff's intestate — giving to the testimony offered on his behalf the most favorable inference to be drawn from it — was a trespasser upon the school yard and the wire mesh structure erected over and around the stairway therein which was under the control of the defendant. As to him, therefore, there was upon it no active duty of vigilance for his protection. The rule is stated in Thompson on Negligence (Vol. 1 [2d ed.], § 945), cited with approval in *Birch* v. *City of New York* (190 N. Y. 397), as follows:

23

" The owner or occupier of real property is under no obligation to make it safe, or to keep it in any particular condition, for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it without his invitation, express or implied." ( *Kleinberg* v. *Schween*, 134 App. Div. 493, 495; *Racine* v. *Morris*, 136 id. 467, 470; *Birch* v. *City of New York*, 190 N. Y. 397, 403.)

The fact that the gate to the school yard was open was not an invitation to plaintiff's intestate to enter the school yard. (*Middleton* v. *Reutler*, 141 App. Div. 517, 519.)

Plaintiff's intestate, on October 4, 1920, the date of the accident, was not attending school. Instead of going to school that morning as his father had directed him, he remained away in disobedience to such direction. Plaintiff's intestate being a trespasser at the time he entered the school yard and at the time of the happening of the accident, the only obligation resting upon the defendant was to refrain from any wanton or willful act producing injury.

In *Martin* v. *Cahill* (39 Hun, 445) the action was brought to recover damages for injuries sustained by the plaintiff's daughter, a child nine years old, in falling from a painter's scaffold. The court in affirming the judgment in favor of the defendant, entered upon a nonsuit, said (at pp. 446, 447): " This case falls within the case of *McAlpin* v. *Powell* (70 N. Y. 126). A landlord was bound to keep in repair fire-escapes. It was used by a child as a balcony, and it was held that the child had no right to go upon the platform of the. fire-escape, and that he was there for no legitimate purpose, and that no action would lie for his injury by reason of the insecurity of the platform. This case is much stronger. The defendant is a house painter, and was employed to paint a house. He had hung his scaffolding from the gutters in the ordinary way and had painted the house one coat. While waiting for the paint to dry before he could put on a second coat of paint, he left the scaffolding hanging some two or three feet below the window of the room occupied by the plaintiff. Her daughter and another girl were warned against the hazard of getting on the scaffold, but later in the day the plaintiff's daughter got out through the window and let herself down in some way upon the scaffold and accidently fell from it to the ground and was injured. The fall was occasioned by no insecurity or defect in the scaffold itself. Certainly the child had no right to go upon the scaffold, and was there for no legitimate purpose in the case presented. ·If the platform of a fire-escape presented no invitation recognized by law for children to use, certainly a ladder hung horizontally under a window of a house by painters furnished none, even to very young children. It was no greater indication that it was designed

for general use ' than the roof of a stoop or piazza, which projects under the window of a dwelling-house,' as stated by the Court of Appeals in *McAlpin* v. *Powell.*"

In *McAlpin* v. *Powell* (70 N. Y. 126) the action was brought to recover damages for the death of plaintiff's intestate, a bright, intelligent boy, nearly ten years of age, alleged to have been caused by defendant's negligence. The court, speaking through Judge MILLER, reversing the judgment in plaintiff's favor, said (at pp. 130, 131): " To maintain an action for personal injury occasioned by the negligence or want of care of another, it must be made to appear that the defendant owed some duty or obligation to the party injured, which he failed to discharge or perform. Unless there is some contract, duty or service which a party is bound to fulfil, there can be no negligence, fault or breach of the obligation. The reported cases, where parties are charged for injuries to another occasioned by accident, have been decided upon the principle that there was negligence in doing or omitting to do some act by which a duty or obligation which the law imposed has been disregarded. The real point to be determined, then, is whether the defendant owed any duty to the deceased. If he was a trespasser when he entered upon the fire-escape, he occupied the position of one who comes upon the premises of another without right, and who can maintain no action if he is injured by an obstruction, or falls into an excavation which has been left open and uncovered. Even a license is not a protection, unless some inducement or enticement is held out by the owner or occupant, and no recovery can be had for injuries sustained. * * * It bore no indication that it was designed for general use, and furnished no invitation or attraction to young children any more than the roof of a stoop to a piazza, which projects under the window of a dwelling-house, and is easy of access to persons in the vicinity. Under such a state of facts, and where a person thus voluntarily exposes himself to danger and is injured, there is no rule of law which authorizes a recovery." (See, also, *Miller* v. *Woodhead,* 104 N. Y. 471; *Strobel* v. *Liebmann,* 197 id. 348; *Walsh* v. *Fitchburg R. R. Co.,* 145 id. 301; *Kane* v. *Erie Railroad Co.,* 110 App. Div. 7; *Middleton* v. *Reutler,* 141 id. 517; *Albert* v. *City of New York,* 75 id. 553.)

The defendant's motions for a dismissal of the complaint made at the close of the plaintiff's case and renewed at the end of the whole case should have been granted. The defendant duly excepted to the denial of each of said motions to dismiss the complaint.

The court erred in making the order denying defendant's motion to set aside the verdict.

The judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs.

C LARKE , P. J., M ERRELL , F INCH and M ARTIN , JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.