## CITY OF BEAUMONT v. DOUGHERTY.*
### (No. 1548.)

Court of Civil Appeals of Texas. Beaumont. June 29, 1927.

Rehearing Denied Sept. 28, 1927.

1. **Continuance ⟞17—Denying continuance or postponement for court's change of order of case on docket held not error, in view of lapse of four months between service and trial (Rev. St. 1925, art. 2161).**

Under Rev. St. 1925, art. 2161, providing that cases should be called for trial in order in which they stand on docket unless otherwise ordered by court, trial court has discretion in setting case on docket subject to review only on showing of injury, and court's having case set and notice thereof posted constituted such order, making refusal of continuance or postponement of case called for trial more than four months after filing of original petition because attorney for defendant knew of setting of case on jury docket only 1½ days before trial, and on ground that case was called out of its order because case immediately preceding one in question had been settled without jury trial, no cause for reversal.

2. **Continuance ⟞30—Amending petition by new allegation of giving notice of claim to defendant city held not to require continuance.**

Amended petition in personal injury action against city, only new allegation of which was that notice of claim was given city, did not constitute surprise to defendant, which had had four months since service of original petition, and refusing continuance on such ground was not error.

3. **Municipal corporations ⟞849—Sailor passing over city's wharf at which ship was docked held invitee.**

Where ship was at city's wharf under orders of harbor master, highest authority as to wharves, to receive cargo for which city was to receive its regular charge, such use was by city's express permission and in accordance with intent with which wharf was being repaired, and sailor on ship going from ship to town over wharf, through which he fell and was injured, was neither trespasser nor licensee, but was invitee.

---

4. Municipal corporations ⚖⇒849—City receiving ship at wharf held to waive all defenses against personal injury action by sailor because of uncompleted condition of wharf.

Where city received ship at wharf by express permission and for its personal advantage, in personal injury action by sailor, it waived all defenses arising from incomplete condition of wharf.

5. Municipal corporations ⚖⇒751(1)—City inviting ship to use wharf held liable to sailor falling through hole in wharf, regardless of repair work by independent contractor.

Where one repairing city's wharf was required to do it under direction of city's engineers, he was not independent contractor, and where city invited ship to use wharf, duty of safeguarding ship's sailors while on wharf rested on city and not on such repairman, even if he had been considered as independent contractor, and city was liable for injury to sailor from falling through hole in wharf, opened and left open without lights or guard by city.

6. Municipal corporations ⚖⇒857—Evidence held to raise issue whether city knew of hole in wharf through which sailor fell.

In sailor's action against city for injuries from falling through hole in wharf, evidence held to raise issue submitted to jury as to whether city knew of existence of hole in sufficient time to have repaired it before injury to plaintiff, by exercise of ordinary care.

7. Municipal corporations ⚖⇒857—Evidence held to raise issue whether city allowed hole in wharf to remain open after need had ceased.

In action by sailor against city for personal injuries from falling through hole in wharf, evidence held to raise issue as to whether city allowed hole to remain open after need of same had ceased.

8. Municipal corporations ⚖⇒857—Evidence held to raise issue whether city was negligent in failing to place light at hole in wharf.

In sailor's action against city for personal injuries from falling through hole in its wharf, evidence held to raise issue submitted to jury as to whether city was negligent in failing to place light at hole.

9. Municipal corporations ⚖⇒857—Evidence held to raise issue whether city was negligent in failing to place guard around hole in its wharf.

In sailor's action against city for personal injuries from falling through hole in its wharf, evidence held to raise issue submitted to jury as to whether city, whose highest executive authority on wharves knew hole was open, was guilty of negligence in failing to place guard rail or barricade around hole.

10. Municipal corporations ⚖⇒849—City held liable for injuries to invitee by failure to keep wharf in repair.

City, owning wharves and docks and receiving profits therefrom, was liable, like individual or private corporation, for injuries caused invitee by failure to keep them in proper condition and repair.

11. Municipal corporations ⚖⇒849—City held to have duty to exercise ordinary care to maintain wharf in reasonably safe condition.

Where city received profits from use of its wharf, it was under duty to exercise ordinary care to keep and maintain it in reasonably safe condition for those whose duty required them to use it, so that they could do work in ordinary and usual manner.

12. Municipal corporations ⚖⇒849—Sailor on ship permitted to use city wharf held to have right to assume city had exercised reasonable care.

Sailor on ship which was permitted by city to use wharf for which city received pay had right to assume that city had performed duty to exercise ordinary care to keep and maintain wharf in reasonably safe condition.

13. Trial ⚖⇒352(5)—Special issues held not erroneous as assuming duty of city to repair hole in its wharf, as being on weight of evidence, assuming negligence by city and of placing extra legal burden on city.

In sailor's action for personal injuries from falling through hole in city's wharf, special issues submitted to jury as to whether city knew of existence of hole in wharf in sufficient time to have repaired it by exercise of ordinary care before injury, as to whether city allowed hole to remain open after need of same had ceased, and whether city was negligent in failing to place light at hole or barricade around it held not erroneous as assuming duty on part of city to repair hole, or as being on weight of evidence, or assuming negligence on part of city, or placing greater burden on city than was imposed by law.

14. Continuance ⚖⇒11—Refusal of continuance to enable city to make repairer, not independent contractor, party defendant, in action for fall through hole in wharf, held not error.

In sailor's action against city for personal injuries from fall through hole in its wharf, refusal to continue case so city might make repairer of wharf, who was not independent contractor, party defendant, was not error, in view of fact that city had no cross-action against him and of fact that city had four months between service of summons and trial in which to make him party.

15. Negligence ⚖⇒131—Evidence of changes and repairs subsequent to injury is not admissible on issue of negligence.

In general, evidence of changes and repairs made or precautions taken subsequent to injury are not admissible on issues of negligence.

16. Appeal and error ⚖⇒1050(1)—Admission of picture of wharf, offered to show conditions at time of accident, taken after hole through which plaintiff fell had been covered and precautions taken, held not prejudicial.

In sailor's action against city for personal injuries from fall through hole in city's wharf, picture of wharf after hole had been covered and proper precautions taken was admissible, in view of fact that it was offered to show conditions existing at time of accident, and that change in condition of wharf was brought out by defendant, and any error therein was not

prejudicial, in view of overwhelming evidence of defendant's negligence.

**17. Damages ⟨∞⟩101—Allowing recovery for money spent and liability incurred for doctors' bills and hospital charges, without requiring items to be reasonable and necessary, held error.**

In personal injury action, special issue submitted to jury as to amount of money plaintiff spent and liability he had incurred for doctors' bills and hospital charges because of such injuries, not requiring such items to be reasonable and necessary, was error.

**18. Damages ⟨∞⟩221 — Guide as to damages should be so explicit that jury could not obey it and award improper or illegal damages.**

In personal injury action, in submitting issue to guide jury in ascertaining damages to be awarded plaintiff, trial judge should be so explicit that jury could not obey his directions and award plaintiff damages based on improper ground or measured by incorrect rule of law.

**19. Damages ⟨∞⟩221—Phrase "and so forth," in issue as to damages in personal injury action, held error.**

Where issue in personal injury case submitted to jury asked amount or money spent and laibility incurred by plaintiff for doctors' bills, hospital charges, and so forth, use of phrase "and so forth" was meaningless and calculated to mislead jury, and constituted error.

**20. Damages ⟨∞⟩221—Submitting issue as to money necessary to compensate for injuries held good against exception that it permitted consideration of items not legally recoverable.**

In sailor's action against city for personal injuries through fall in hole in city's wharf, plaintiff was entitled, on findings of defendant's negligence, to damages sustained at time of trial and such as would be sustained in future, and issues submitted to jury as to what amount of money, if paid at time of trial, would reasonably compensate plaintiff for injuries, which was not to include hospital fees and the like, submitted in another issue, was good as against exception that it permitted jury to consider matters and items not legally recoverable, although court did not enumerate elements to be considered by jury in answering question, in view of fact that plaintiff properly pleaded measure of damages and elements constituting damages, and that court received no evidence improper under pleadings.

**21. Appeal and error ⟨∞⟩273(5)—Charge not fundamentally erroneous constitutes reversible error only when its omissions are specifically pointed out by proper exception.**

Charge to jury, which is not fundamentally erroneous, constitutes reversible error only when its omissions are specifically pointed out by proper exception.

**22. New trial ⟨∞⟩102(3)—Refusal of new trial for newly discovered evidence held not error, where four months intervened between service and trial.**

In personal injury action against city by sailor for falling through hole in city's wharf, overruling defendant's motion for new trial on ground of newly discovered evidence, consisting of information as to plaintiff's rating as seaman and extent of injuries was not error, in absence of excuse why investigation by which such evidence was discovered was not made before trial and of fact that defendant had four months between service of summons and trial.

**23. Trial ⟨∞⟩120(2)—Counsel's argument that defendant would give its eyes if jury would find plaintiff guilty of contributory negligence held not error, in view of evidence.**

In sailor's action against city for personal injuries from falling through hole in city's wharf, where there was no evidence of contributory negligence, argument by plaintiff's counsel to jury that defendant would give its eyes if jury would find plaintiff guilty of contributory negligence because such finding would settle case did not constitute error.

**24. Municipal corporations ⟨∞⟩849—Sailor leaving ship at city's wharf held not guilty of negligence contributing to fall through hole in wharf.**

Where ship was put at city's wharf with its consent and it was to receive compensation for use of wharf, sailor leaving ship to go to business section of town on needed errand for himself, taking proper precautions for protection before leaving ship, and asking way and following directions, was not guilty of negligence contributing to fall through unguarded and unlighted hole in wharf.

·On Rehearing.

**25. Appeal and error ⟨∞⟩1140(1)—Appellee's motion to withdraw remittitur may be granted on proper showing.**

In personal injury action, remittitur filed by appellee covering item of doctors' bills may be withdrawn on motion supported by proper showing.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Action by John Dougherty against the City of Beaumont. From a judgment for plaintiff, defendant appeals. Affirmed in part, and reversed in part, and remanded.

J. B. Morris and F. M. Sheffield, both of Beaumont, for appellant.

Conley, Renfro & Keen, of Beaumont, for appellee.

WALKER, J. In this case, upon the verdict of the jury, appellee was awarded judgment against appellant for the sum of $16,256.50, for personal injuries which, on the allegations of his petition, were received by him through appellant's negligence.

[1] Appellant complains of the action of the court in calling this case for trial out of the order in which it stood on the docket. The term of court at which this case was tried began on the 4th day of October, 1926. The appellee's original petition was filed and service had thereon on the 2d day of June, 1926. Appellee filed an amended petition

on the 13th day of October, repeating, in substance, the allegations of his original petition, but alleged, as new matter, the giving of notice of the nature of his injury to appellant on the 13th day of January, 1926. October 18th was the first day of the jury week of the term. This case was the last of 73 cases on the jury docket subject to call at that term. Without the knowledge or consent of appellant, this, with 24 other cases, was set for trial on the first day of the first jury week. Appellant's attorney had actual notice of this setting only three or four days before the case was subject to call under that setting. We take the following statement from the trial judge's explanation of his action in making the settings for the first week:

"I have a private docket here on which I enter the cases and on the first jury week in October, I set the case of Roy Taylor v. Bert Hughes Tire Company, No. 25221, and the second case I had set was 26757, Dougherty v. City of Beaumont, and the third case specially set for that day was 27397, Brown v. Hamshire, and this other setting. We had the regular setting of the entire jury docket, and it is my recollection that there were not less or probably one or two more than 25 jury cases set for that week. In the Bert Hughes Tire Company Case, which was set before the Dougherty Case by the court, the same was called for trial on that morning, and the parties settled and disposed of their case and so informed the court, and the court called the next case which he had specially set for that day, which was the case of John Dougherty v. City of Beaumont."

This order was made by the judge in his private chamber, no one being present except himself and the clerk.

One of the deputy district clerks testified as follows:

"It is a common practice to set these cases out of their numerical order. It is customary to set them out of their numerical order. It is the practice of the courts to make the entry on their dockets denoting a setting of the case, and then the clerk makes up the settings accordingly. The judge tells the clerk what cases he wants set, and then the clerk sets them and makes up the settings. That was done in this case."

Before the case was called, the plaintiff in another case set for trial on that day moved the court to call its case ahead of this 'case, which motion was denied. Thereupon appellant moved for a continuance or postponement upon the following grounds: (a) The case was called for trial out of its order on the docket; (b) appellant had not had sufficient time to prepare its defense; (c) the filing of the amended petition constituted surprise.

[2] The court did not err in overruling appellant's motion. Under article 2161, R. C. S., reading:

"All cases in which final judgment has not been rendered by default shall be called for trial in the order in which they stand on the docket unless otherwise ordered by the court,"

—the trial court is vested by law with a discretion in setting the cases on his docket, subject to review only upon a showing of injury. Railway Company v. Shuford, 72 Tex. 165, 10 S. W. 408. The action of the court in setting this case and having the settings made up and notice thereof posted by his clerk was an order within the meaning of the statute. No injury was shown. Appellant had had four months in which to prepare its case for trial, and no excuse was offered explaining why that was not done. The amended petition did not constitute a surprise. The giving of notice of his claim to appellant, as required by appellant's charter, was the only new, independent ground alleged by the amended petition; at least that is the only one specifically mentioned by appellant. Since it was conceded that notice was given, no surprise resulted from the amendment.

The facts of this case are, substantially, as follows:

Appellant owns and operates a wharf and dock system on the banks of the Neches river within its corporate limits, which is served by a railroad running along the edge of the wharf, also owned by appellant. On the 9th of January, 1926, the date of appellee's injury, John Jacobson was constructing unit No. 1 of this system under a written contract with appellant which by its conditions made him an independent contractor. This contract provided that extra work might be covered by its terms, and under this clause Jacobson undertook to do certain repair work on unit No. 6 further down the river, that had been constructed at least three years prior to that date. In doing this work, Jacobson's servants used a hole in the wharf between the tracks of the railroad and about 40 or 50 feet long. This hole was the width of the railroad track. Originally this hole had been opened about three years before the date mentioned, but had been covered up about four or six weeks before January 9th, and, before Jacobson went on the job, appellant, through its engineering department, reopened the hole for the purpose of making certain repairs, and left it in that condition. Finding the hole open, Jacobson's servants used it in making repairs on the wharf immediately under the hole. It would have taken an hour or two to cover the hole, thereby rendering it safe for pedestrians. It could, also, have been protected by a guard rail, light, or watchman, but that was not done. December 14th or 15th was the last time Jacobson's men used this hole. Though the work was being done by Jacobson's servants, appellant's engineering department had general supervision, directing how it was to be done, and there was no evidence that the exclusive possession of unit No. 6 was

delivered by appellant to Jacobson. Under the evidence, appellant had the right to close the hole at any time, or take any other necessary step to protect those using the wharf from the danger created by leaving the hole open. Appellant offered no excuse for not closing the hole after Jacobson's servants ceased using it. During the time mentioned, unit No. 6 was not in public service, and on the 9th day of January was in an incompleted condition, and the work being done by Jacobson had not been accepted by appellant.

On the 9th day of January, the steamship West Ekonk was anchored at the city wharves for the purpose of loading. To expedite this work, the shipping agent furnishing the cargo for this ship asked and secured permission of the harbor master, an employee of appellant, to move his ship to unit No. 6. This was accomplished in the afternoon of that day. The shipping agent knew that unit No. 6 had not been opened to the public, that it was in an unfinished condition, and that the work being done by Jacobson had not been accepted by the city. Though unit No. 6 was in this incompleted condition, the West Ekonk used it, and appellant collected its regular wharf charges for this service. On the night of the 9th of January, appellee, a sailor on the West Ekonk, left his ship to go up town, and in walking along the wharf fell into the hole above described, and received the injuries for which he sued herein. We take the following statement of his testimony from appellant's brief:

"I was notified by the chief engineer about 1 o'clock Saturday afternoon that I was going to be put below. He said it might be necessary to go at 12 that night. That was Saturday night that I was to stand my first watch below. I did not go on that watch; I didn't get a chance. I told the chief after we tied up around a quarter of 6 that I had to go to town to get a flash light battery for my light. I had a flash light, but the battery was bad, and we didn't have any on the ship. When the crew that belonged to the Mississippi Steamship Company left they took all the batteries and everything away, so I had to go and get a battery up town. I did not know that hole was there in the wharf at the time I fell into it. I did not know the condition of the wharf. I was walking along there carefully. I asked the watchman—I don't know his name—the Shipping Board watchman, I met him and asked him what was the nearest and best way to town, and he said, 'Do you see that watchman standing amidship right at the gang plank, right at the gang way?' He said the best way to town is to go right up the docks until you see a light over on the left, or rather on the right as you go down the docks, and when you get to that light turn and go over to it and follow that Main street on to town. At the time I fell into that hole I was traveling that way."

On the facts stated, appellant asserts that (1) appellee was a trespasser; (2) at most he was a mere licensee; (3) the negligence, if any, causing his injuries was that of the contractor, John Jacobson, an independent contractor, for whose negligence it was in no way liable; and (4) as a matter of law it was not negligent towards appellee.

[3] The mere statement of the evidence relieves appellee of the charge of being a trespasser. His ship was lawfully docked at unit No. 6, and as one of its servants he had the same rights as the ship. Hicks v. Railway Company (Tex. Civ. App.) 212 S. W. 840. Nor was he a mere licensee. He was an invitee. Again, we say that appellee's rights rested upon the relation created between his ship and appellant by virtue of the permission given his ship to berth at unit No. 6. The ship occupied that berth under orders and by permission of the harbor master, the highest authority on the wharves. It was at this unit for the purpose of receiving its cargo, for which service appellant was to receive its regular charge. The occupying of unit No. 6 was for the common interest and mutual advantage of both the ship and appellant. This unit has been constructed and was being repaired for the use of such ships as the West Ekonk, and the use of this unit at this particular time was not only acquiesced in by appellant, but was by its express permission, and was in accordance with the intent or design for which it was being repaired. Foster Lbr. Co. v. Rodgers (Tex. Civ. App.) 184 S. W. 761.

[4] The fact that this unit was in an incompleted condition and had not been regularly opened to the public and had not been received from the contractor does not alter the relation between appellant and appellee. Appellant was not compelled to receive this ship at unit No. 6, nor permit its use. Having done so by express permission and for its personal advantage, it waived all defenses arising from its incompleted condition, and impliedly represented that it was in suitable condition for the service to which this use necessarily subjected it. Birch v. New York, 190 N. Y. 397, 83 N. E. 51, 18 L. R. A. (N. S.) 595.

[5] On this particular job, Jacobson was not an independent contractor. Though he was doing this work, he was required to do it under the direction of appellant's engineers. The control of the wharf had not been surrendered to him, but at least in some respects was retained by appellant. The hole through which appellant fell was not opened by Jacobson, but by appellant. Jacobson did not leave it open. Appellant left it open. He was under no obligation to close it, or to protect it by guard rails, lights, or watchman, but this duty at all times rested on appellant. In other words, appellant was simply using Jacobson's servants to repair this unit. But, if this were not true, and if, in fact, Jacobson, as to this particular job, was an independent contractor, yet the negligence causing appellee's injuries was that

of appellant and not Jacobson. On the theory that he was an independent contractor, appellant had no right, as between it and him, to invade his possession of the unit and open it up to the public, thereby subjecting him to risks not within the terms of the contract; for Jacobson had not contracted with appellant to keep this unit in a reasonably safe condition for public use. He did not send the ship to this unit, nor was his permission asked or secured. When appellant invited the West Ekonk to use this unit, the duty of safeguarding its servants rested on it and not on Jacobson.

[6-9] The following issues of negligence were submitted by the court to the jury and answered by it in appellee's favor:

"Special issue No. 1: Did the city of Beaumont know of the existence of the hole in the wharf into which the plaintiff fell in sufficient time to have repaired the same before the injury to the plaintiff, by the exercise of ordinary care? Answer 'Yes' or 'No' as you find the facts to be."

"Special issue No. 4: Did the city of Beaumont, defendant, allow said hole to remain open after the need of the same had ceased? Answer 'Yes' or 'No.'"

"Special issue No. 7: Was the city of Beaumont guilty of negligence in failing to place a light signal around or about said hole? Answer 'Yes' or 'No.'"

"Special issue No. 9: Was the city of Beaumont guilty of negligence in failing to place a guard rail or barricade around the said hole at the time of said accident? Answer 'Yes' or 'No.'"

[10-12] It seems to us that the statement we have made of the evidence is a complete answer to the proposition that the issues of negligence submitted were not raised. Owning its wharves and docks and receiving wharfage and profit therefrom, appellant was liable, like an individual or a private corporation, for injuries caused an invitee by the failure to keep them in proper condition and repair. Dillon on Municipal Corporations (5th Ed.) § 1665. Therefore it was the duty of appellant, having invited the West Ekonk to use unit No. 6, to exercise ordinary care to keep and maintain it in a reasonably safe condition for those whose duty required them to use it, so that they could do their work in the ordinary and usual manner. McQuillan on Municipal Corporations, § 2677. As an employee of the West Ekonk, appellee had the right to assume that appellant had discharged this duty to the servants of his ship, and that unit No. 6 was in a reasonably safe condition. Appellant knew, through its highest executive officer on the wharves, that the hole was uncovered. Knowing it to be open, and being under duty to exercise ordinary care for the protection of those whose duty required them to use its property, appellant left it open, unprotected by a signal light, guard rail,

or watchman. In the section cited, supra, from McQuillan, it is said that a city owning wharves rests under the duty of keeping "the landing in proper repair so as to protect persons using the floor thereof as a way."

[13] Appellant criticises the issues of negligence submitted to the jury on the grounds that (a) they assumed the duty on the part of the city to repair the hole in the wharf; (b) they were on the weight of the evidence; (c) they assumed negligence on the part of the city; (d) and placed a greater burden on the city than was imposed by law. These criticisms are not sound. The questions are in the usual form; and in a clear manner, without suggesting the answer, ask the jury if the facts submitted constituted negligence.

[14] Since Jacobson was not an independent contractor, the court did not err in refusing to continue the case that appellant might make him a party. Appellant had no cross-action against him. Even had he been an independent contractor, appellant had had four months in which to make him a party, and, having failed to do so, could not complain of the court's refusal to continue the case on that ground.

[15, 16] Over appellant's objection, appellee offered in evidence a picture of unit No. 6 taken after his injury and after the hole had been covered up and proper precautions taken for the protection of those using the wharf. We recognize the general rule contended for by appellant, that evidence of changes and repairs made or precautions taken subsequent to the injury are not admissible on the issues of negligence. 29 Cyc. 616. Giving full weight to the rule invoked, which in its general terms is the law of this state, this picture was admissible. The evidence of changed conditions of the wharf was merely incidental to the purpose for which the picture was offered. Appellee was seeking to show the condition existing at the time of the accident, for which purpose the picture was of material weight. The change in the condition of the wharf, as reflected by the picture, was not brought out by appellee, but by appellant. The purpose for which this picture was offered constitutes an exception recognized by the courts of this state. Railway Company v. Johnston, 78 Tex. 536, 15 S. W. 504; Mayton v. Sonnefield (Tex. Civ. App.) 48 S. W. 608.

But, apart from this exception, no prejudicial error was shown. The evidence so overwhelmingly predominated against appellant on the issue of negligence that a finding by the jury in its favor on the issues submitted would have been without support, and on assignment to this court would have been set aside. Appellant was not prejudiced by the picture, whatever may be the law as to its admissibility.

[17] Issue No. 12 was as follows:

"What amount of money do you find that the plaintiff has spent and incurred for doctors' bills, hospital charges, and so forth, by reason of said injuries, if any, to the present date? Let your answer be in dollars and cents by writing the amounts."

Appellant excepted to 'this issue on the ground that it did not "limit the plaintiff to the recovery of items of expense reasonably and necessarily incurred." This assignment is sustained. Appellee was entitled to recover only the reasonable cost of such medical bills, and so forth, as he necessarily incurred. 17 C. J. 802. As we said in Interstate Casualty Company v. Hogan, 232 S. W. 354:

"The pleadings should be so framed as to show that the items thus involved are reasonable, and the charge of the court should so limit the recovery."

[18, 19] In submitting the issue to guide the jury in the ascertainment of the sum of money to be awarded the plaintiff for personal injuries, a trial judge should be so explicit in his instructions that the jury could not obey the directions of the court and award to the plaintiff damages based upon an improper ground or measured by an incorrect rule of law. Railway Company v. Beasley, 106 Tex. 160, 155 S. W. 183, 160 S. W. 471. In answering issue No. 12, the jury awarded appellee the full amount of his doctor and hospital bills charged against him by the doctors and the hospital. Though the evidence was to the effect that these charges were reasonable and necessary, the jury were not told by the court to so limit its award. The issue was subject to the exceptions urged, and, the rule quoted by us from the Beasley Case having been invoked, this charge was error. The use of the phrase "and so forth" was error. This language was meaningless and calculated to mislead the jury.

[20] Issue No. 13 was as follows:

"What amount of money, if paid now, would reasonably compensate plaintiff for his injuries by reason of said accident, if any injuries he received? This amount is not to include hospital fees and etc., in issue No. 12.

"In answering this question you may take into consideration damage already sustained, if any, and such as will be sustained in the future, if any, by reason of said injury, if any. Let your answer be in dollars and cents, by writing the amount."

This issue was excepted to on the following grounds: (a) "Because said issue does not limit the jury to such injuries as were reasonably and necessarily incurred by plaintiff in said accident, if any, as a proximate result thereof;" and (b) "because said charge is too general and does not give the jury any legal measure of damages, but permits the jury to find against this defendant and to take into consideration in its finding matters

and items which are not legally recoverable herein."

[21] Issue No. 13 was not fundamentally erroneous. It did not submit an improper ground, nor did it measure appellee's rights by an incorrect rule of law. Appellee was entitled, under the answers of the jury finding appellant guilty of negligence, to damages sustained at the time of the trial and such as would be sustained in the future. That was the measure of damages submitted. That is the damages "already sustained" and "such as will be sustained" "if paid now." The exception was general, as the language of the charge was directed against the "measure of damages" and not against the failure to submit the separate elements constituting the damages. The exception that the charge "permitted the jury to find against this defendant and to take into consideration in its findings matters and items which are not legally recoverable herein" was too general. Not being fundamentally erroneous, a charge is reversible error only when its omissions are specifically pointed out by proper exception. The argument of appellant is that the court should have enumerated in its charge the elements to be considered by the jury in answering this question. But that was not the exception. Our construction of this charge has direct support in Hines v. Kelley, 252 S. W. 1036, by the Commission of Appeals. There it was held that only specific exceptions could be considered. On the point involved here, Judge McClendon said:

"Our holding goes only to such elements as were expressly designated in the objection."

Without analyzing appellee's petition. he properly pleaded his measure of damages and the elements constituting his damages, and on the trial his evidence was limited to his pleadings. The court received no improper evidence. No specific omissions being pointed out, and no improper evidence being before the jury, this charge was not reversible error. See generally Texas & Southwestern Digest, "Damages," ⊕256 (13).

[22] The court did not err in overruling appellant's motion for a new trial on the ground of newly discovered evidence. Subsequent to the trial and before the overruling of the motion for new trial, appellant, by investigation, secured certain information as to appellee's rating as a seaman, the extent of his injuries, etc. No excuse was offered why this investigation was not made before the convening of the October term. Appellant had four months in which to do that. This showing was lacking in diligence.

[23, 24] In his argument to the jury, appellee's counsel said, in substance, "that the defendant would give its eyes if the jury would find the plaintiff guilty of contributory negligence, because such finding would settle

the case." This argument was not error on the facts of this case. We are very much in doubt whether the issue of contributory negligence was even raised, but, having been submitted, a finding in appellant's favor thereon would have been so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. Appellee was not guilty of negligence in leaving his ship to go to the business section of the town upon a needed errand for himself. He took all proper precautions for his protection before leaving his ship. He asked the way, and followed the directions given him. He knew nothing about the hole in the wharf. He had the right to presume that the wharf was in a reasonably safe condition for his use. So, no matter how erroneous, as an abstract legal proposition, this argument may have been, it did not constitute error on these facts. But, if we are in error in our application of the law as to the facts on the issue of contributory negligence, we cannot be in error in saying that the weight of the evidence was against the issue. That being the case, under a recent holding by us in Oilmen's Reciprocal Association v. Hayes (Tex. Civ. App.) 295 S. W. 675, the argument was not erroneous.

The sum of $15,000 awarded the appellee in answer to issue No. 13 was not excessive. In our judgment, it was so clearly supported by the evidence that it is not necessary to review the extent of his injuries.

For the error in issue No. 12, the jury's finding in favor of appellee for the expenses for his doctor and hospital bills is reversed, and as to these items the cause is remanded for a new trial. The judgment for the sum of $15,000, as found by the jury in answer to issue No. 13, is affirmed.

Reversed and remanded in part, and in part affirmed.

### On Rehearing.

Appellant says there is nothing in the record to support our conclusion: "The action of the court in setting this cause and having the setting made up and notice thereof posted by his clerk was an order within the meaning of the statute." We gave the facts fully upon which this conclusion was based, and our opinion rested upon the facts stated, rather than the conclusion criticised by appellant.

Again, appellant criticises our conclusion that its attorney "had actual knowledge of this setting only three or four days before the case was subject to call under that setting," saying: "There is nothing in the record to show that appellant's attorney had any notice whatever of this setting." Appellant, in support of its criticism of our conclusion, says:

"In the argument of this case before this Court of Civil Appeals, appellant's attorney stated that the attorney for appellee had stated to appellant's attorney some few days before the case was called for trial, on or about the 13th of October, when appellee filed his amended petition, that the case would be called for trial on the 18th of October, but nothing was said about the case being called out of its order. On the 13th of October, appellant's attorney examined the docket and minutes of the court and found no order either designating a time for the calling of the jury docket or setting this case for trial out of its order. On Saturday, the 16th of October, before this case was called on Monday the 18th, appellant's attorney again inquired in the clerk's office, and the clerk then had a list of settings, and this case appeared to be the second case set for the first day of the jury term, which was on the Monday following. It was just before noon when appellant's attorney found the list of settings in possession of the clerk, and the clerk stated that he had just received them from the judge. This was the first information and first notice, either actual, constructive, or otherwise, that appellant's attorney had that this case would be called for trial out of its order, and that was only one-half of Saturday and all of Sunday. Appellant's attorney made substantially this statement before the Court of Civil Appeals in arguing this case."

It occurs to the court, without further reference to the record, that this statement by appellant fully sustains our conclusion. Anyway, in answer to appellant's motion for additional conclusions of fact, we adopt its statement as above given as our conclusion on this issue. In all other respects, appellant's motion for rehearing and for additional conclusions of fact is overruled.

[25] On the 18th of June, after the filing of our opinion herein reversing in part and affirming in part the judgment of the trial court, appellee filed a remittitur as to the sum of $1,256.50, covering the item of doctors' bills, etc. On the 21st day of this month he filed a motion asking permission to withdraw his remittitur, which motion is granted.