RUTH A. KOEHLER, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

(Argued April 11, 1933; decided May 23, 1933.)

*Robert H. Koehler* for appellant.

*Arthur J. W. Hilly*, Corporation Counsel (*J. Joseph Lilly, Henry J. Shields* and *Edward A. Goebel* of counsel), for respondent.

CROUCH, J. West street between Perry street and West Eleventh street in the borough of Manhattan was originally an exterior street seventy feet wide. In that space there are two sets of freight railroad tracks. Eighteen feet to the west of the railroad tracks there is a line of fire hydrants and electric lights. Presumably that was the former west line of the street. Surrounding the hydrants is a raised platform in which is imbedded iron columns or stanchions about four feet high. From that row of hydrants westward to the dock line is a space one hundred and eighty feet wide, now and for many years past used, together with the original seventy feet, as a unified throughfare two hundred and fifty feet wide, with four lanes of traffic permitted. That this one hundred and eighty feet of the street as it actually exists is, for administrative purposes, designated a " marginal

wharf " and not a " public street " (Greater New York Charter [Laws of 1901, ch. 466, as amd. L. 1913, ch. 327], § 819), has no significance upon the question of liability here. The entire two hundred and fifty feet is in fact used and intended to be used for street purposes.

About ten o'clock on the night of October 22, 1928, plaintiff was a passenger in an automobile traveling north on the easterly side of West street. There was a line of freight cars standing on the tracks covering substantially the entire block from Perry street to West Eleventh street. Upon approaching Perry street, the driver of the automobile desiring to cross over to the westerly north-bound lane of traffic, turned to his left in front of the parked freight cars, and proceeded in a north to north-westerly direction to reach the desired traffic lane. In so doing he collided with one of the hydrants located about ninety-one feet north of Perry street. To recover damages for the injuries sustained by her in that collision, plaintiff sues the city, alleging (a) that the existence of the hydrant, with the surrounding stanchions and platform, amounted to the maintenance of a nuisance; and (b) that the city while thus permitting the hydrant, stanchions and plat-form to exist, negligently omitted to place thereon lights or other warning signals, or in any manner to guard and give proper protection at night time to persons using the highway. On the trial the defendant had a verdict which was unanimously affirmed. The case is here by permission of this court.

We are of the opinion that the law of the case is ruled by the decision of this court in the case of *Stern* v. *International Ry. Co.* (220 N. Y. 284). It may be assumed that the original location of the hydrants was proper and lawful. It may be true that their continued existence, as so located, was likewise proper and lawful. The question, however, is whether, when the accident occurred, the location of the hydrant in question was dangerous and whether that danger was unreasonable.

That question is to be answered in the light of all the circumstances shown by the evidence; and if its existence at that time was unreasonably dangerous, it makes little difference whether the danger be said to flow from maintenance of a nuisance or from a negligent omission to guard the wayfarer. "A hydrant answers a useful and necessary purpose, and it is required to be placed somewhere * * *." (*Dougherty* v. *Village of Horseheads*, 159 N. Y. 154, 159.) Whether a hydrant as it is located in a particular instance is a legitimate obstruction, may be a question of fact or a question of law. "Always, however, the ruling [is] made, not absolutely, but relatively to particular conditions of location, of convenience or of necessity." (*Stern* v. *International Ry. Co.*, *supra*, p. 295.)

Considering together the evidence here relating to the surrounding conditions as bearing on convenience and necessity, and the evidence relating to the location and the illuminative effect of the electric lights, of shadows cast by the standing freight cars, and as to whether or not the hydrant and stanchions had been painted with black and white stripes as required by the city ordinance, the question of unreasonable danger was one for the jury. But for errors on rulings of law by the trial judge, the judgment would have to be affirmed.

The court excluded testimony as to the existence of a line of hydrants on the easterly curb of West street, and another line near the docks on the westerly side. This testimony was relevant on the question of necessity. Excluded testimony as to other similar accidents was relevant on the question of notice of an existing dangerous condition. The chief error, however, was in the applicable law as stated by the court to the jury.

After telling the jury, in substance, that the question for decision was whether or not the location of the hydrant was so dangerous and the danger so needless that the choice became an unreasonable one, the court proceeded

to deal with the subject in terms of negligence. The jury was told that if they found the city negligent in maintaining the hydrant, as it did under all the circumstances and conditions, they were to determine further whether or not the city was *solely* responsible for the accident. It was apparently conceded that this plaintiff, as a passenger in the car, was herself guilty of no negligence. The charge is silent on that point. It, therefore, was not necessary for the jury to find that the city was solely responsible for the accident before it could be held liable. The court's attention was called to the point by a specific exception. The court in the same connection was asked to charge the jury that " if the driver of the automobile was guilty of any negligence contributing to the accident such negligence under the law of the state of New York cannot be imputed to the plaintiff and will not bar a recovery by her." The request was refused. From the charge as given and from the rulings on requests, the jury must necessarily have understood that if the accident was due in any degree to the negligence of the driver, the plaintiff could not recover. The error was vital.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to the appellant to abide the event.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgments reversed, etc.