HENRY M. STEEVES, JR., an Infant, by HENRY M. STEEVES, SR., His Guardian ad Litem, Appellant, *v.* CITY OF ROCHESTER, Respondent.

HENRY M. STEEVES, SR., Appellant, *v.* CITY OF ROCHESTER, Respondent.

Argued May 26, 1944; decided July 19, 1944.

*John J. Scully* for appellants.

*Charles B. Forsyth, Corporation Counsel (Sam Di Pasquale* of counsel), for respondent.

Judgments affirmed, without costs; no opinion.

Concur: LEHMAN, Ch. J., LOUGHRAN, LEWIS, DESMOND and THACHER, JJ. CONWAY, J., dissents in opinion in which RIPPEY, J., concurs.

CONWAY, J. (dissenting). These are appeals from nonunanimous judgments of affirmance by the Appellate Division, Fourth Department, of judgments of the Supreme Court, Monroe County, dismissing the complaints at the close of the plaintiffs' case on the grounds that plaintiffs had failed to prove defendant's negligence and plaintiffs' freedom from contributory negligence.

The infant plaintiff (hereinafter called plaintiff), was injured when a pot torch (also called a flare or a bomb) exploded. He was then eleven years and four months old. He and another boy observed the pot torch at the corner of two streets in the City of Rochester, between the main curb and the sidewalk near a WPA sign. His companion kicked it. Plaintiff kicked it twice to set it upright again. The boys left it for a few minutes and then returned. They noticed that the pot torch had been tipped over, that oil was coming from it and that the sign and the fence near the sign were on fire. The boys became frightened and tried to extinguish the flame from the oil. The plaintiff kicked the torch to get it in an upright position. It " exploded or something like that." Plaintiff testified: " There was a flash of all different colors." The plaintiff was set on fire and so badly burned that he was in a hospital for nearly a year.

There are two types of pot torches. " The old type has a square bottom and rounded off like a little ball, and you can slide it along the ground. It will hold about a quart of kerosene oil and a big heavy wick. And the new type are like one of these ball affairs that tips over and tips back itself. You can't tip them over hardly, because it tips back." The torch here was not a flat bottomed one.

There was testimony from various city employees from the city police and fire departments that complaints were received about children playing with pot torches about four or five times a week. Those children used the torches to light papers and piled leaves about them to start bonfires. When the city officials received notice of fires caused by children in this manner, they summoned the police car and, if the fire were serious, summoned the fire department apparatus also.

The trial court dismissed the complaint on the ground that plaintiff had failed to prove defendant's negligence and plaintiff's freedom from contributory negligence. The Appellate Division affirmed by a closely divided court.

It is well settled that a city is liable for failure to keep and maintain its streets and sidewalks in a reasonably safe condition for the use of the public and that it is liable for permitting dangerous obstructions or nuisances thereon. (*Koehler* v. *City of New York,* 262 N. Y. 74, 77; *Stern* v. *International Ry. Co.,* 220 N. Y. 284, 294; *Kamnitzer* v. *City of New York,* 265 App. Div. 636, 638.)

We have also said that: " A dangerous attraction in a public highway may impose liability to a child on the part of the one responsible therefor, because of failure to exercise due care although there would be no liability if the attraction were upon private premises where the child had no right to go." (*Tierney* v. *New York Dugan Bros., Inc.,* 288 N. Y. 16, 19.)

While the highway here was in a safe condition for an adult, since the excavation work and the sign were illuminated by the pot torch, it may not have been safe for a child because the pot torch was " a dangerous attraction " to a child. There is ample evidence in the case that children played with the pot torches; that fires were caused in that manner; that the city had knowledge of it. The defendant could reasonably anticipate that some one would be hurt as a result.

In *Tierney* v. *New York Dugan Bros., Inc.* (*supra*), defendant's servant left an electric truck unattended and unlocked while he made deliveries, while he knew there were children about. Plaintiff and two other children set it in motion and plaintiff was injured when he jumped from the moving vehicle. It was held that *the danger of interference by little children indulging their instincts of play* was apparent and that the driver should have left the vehicle in such condition that it could not be put in motion.

In *Long* v. *City of Dunkirk* (260 N. Y. 599) a kettle of tar was placed on a truck parked on the street. Boys climbed onto the truck and took tar from the kettle. Plaintiff put his hand down deep in the kettle and his hand was burned by hot tar. We held that to leave the kettle unguarded and uncovered was a negligent act.

In *Parnell* v. *Holland Furnace Co.* (260 N. Y. 604), a damaged car was left in a space between defendant's property and a building where people dwelt. The space was used in common by tenants of both buildings. A child removed the cap from the fuel tank. Subsequently plaintiff stood on the running board of the car, striking stones together, as a result of which there was an explosion and plaintiff was injured. We held that defendant had a duty not to leave such a dangerous instrumentality in the alley when it knew that children were playing there.

The difficulty with the instant case is that defendant had a right and duty to place a light of some kind in front of the sign. The only question is whether defendant should have used some other type of light than a pot torch, because of the likelihood that children would play with pot torches and be burned.

Section 80–10 of the Building Code of the City of Rochester provides: " WARNING LIGHTS. All pits, excavations, fences, barriers, builder's equipment, building materials or rubbish in or upon a street * * * shall have placed upon or by them, after dark, a number of *illuminated lamps with red globes*. Such lamps shall be so located and maintained as to afford proper warning of danger to pedestrians and vehicles."

Section 62–27 provides: *" Streets to be guarded when being improved.* 1. Whenever a pavement or sewer is being constructed or repaired in a street, or whenever pipes, mains or conduits are being laid or repaired in a street, or whenever any other work is being done in a street, it is the duty of the person performing the work to place and maintain sufficient guards about the place where the work is being done, so as to secure public safety, until said street is ready for use and such person must at all times during the night keep *lighted lamps* not more than twenty-five feet apart upon said guards so as to give warning to all persons of such work." (Emphasis supplied.)

Certainly pot torches are not " illuminated lamps with red globes " and we doubt that they are included in the term " lighted lamps " as used in ordinary language. While a violation of those ordinances may not be a basis of a cause of action here since they were " intended for the protection of persons travelling on the highway in the usual manner " (*Swift* v. *City of New York*, 270 N. Y. 162, 165), we think they are some evidence that *lamps rather than pot torches* were considered the proper method of illumination in city streets.

In this connection it may be noted that subdivision 17 of section 15 of the Vehicle and Traffic Law provides that omnibuses, trucks and tractors shall carry emergency lighting equipment; that the equipment may consist of " flares of the type used by railroads, flaring candles, torches or lanterns "; that " when any such vehicle or combination of vehicles, * * * is parked or stopped on a *public highway except within a city or incorporated village,* * * * the operator of such vehicle or combination of vehicles shall cause at least one light or lighted flare to be placed on the highway in front of such vehicle or combination of vehicles, and at least one light or lighted flare on the highway in the rear of such vehicle or combination of vehicles * * * ." That would seem to indicate that flares or torches may properly be used upon public highways outside cities or incorporated villages.

While the violation of the ordinances and the use of pot torches within a city do not constitute negligence *per se,* we think there is clearly a question of fact whether the use of pot torches within a residential neighborhood as here with knowledge that children have been attracted by and have played with such torches constitutes negligence.

Plaintiff testified that the torch was not of the flat bottom type. It must have been one that tipped easily, since plaintiff and his companion were able to tip it with a few kicks. It may also have been defective, since it apparently exploded when plaintiff kicked it the last time.

There was evidence from which the jury could have found that defendant was negligent in using that type of light in a residential neighborhood and that a lamp would have been less attractive to children and consequently less dangerous.

The court below also held that plaintiff was guilty of contributory negligence as a matter of law. That, too, is a difficult question. The plaintiff was then eleven years of age, knew something about fire and had been told by his mother not to go near the torches. The general rule is that " a child is not guilty of contributory negligence if it has exercised the care which may reasonably be expected of a child of similar age and capacity." (*Camardo* v. *New York State Railways,* 247 N. Y. 111, 115.) In that case it was said (p. 117): " The only rule that can safely be drawn from the decisions of this State is that a recovery may be had for injuries inflicted upon

a child by the negligence of another only where an inference may be drawn from the evidence presented in the particular case that no failure on the part of the child to exercise the care which might reasonably be expected of a child of equal age and capacity contributed to the injury. * * * *Only where the circumstances admit of only one inference may the court decide as a matter of law what inference shall be drawn."* (Emphasis supplied.)

We do not think the circumstances here admit of only one inference. The injury occurred while plaintiff was trying to put out the fire he had caused or thought he had caused. He admitted that he was frightened. He probably thought that he would be punished if it were discovered that he had anything to do with causing the fire. What a child of eleven years could reasonably be expected to do under those circumstances is a question of fact for a jury. The plaintiff here was on a public street and was not in a place where he had no right to be as in many of the cases cited by respondent (*McAlpin* v. *Powell*, 70 N. Y. 126; *Strobel* v. *Liebmann*, 197 N. Y. 348; *Albert* v. *City of New York*, 75 App. Div. 553; *Basmajian* v. *Board of Education*, 211 App. Div. 347), nor was the danger that the torch would explode open and apparent. (*Albert* v. *City of New York, supra.*)

Respondent urges that plaintiff was a volunteer and therefore cannot recover. It cites a Federal case (*Pike* v. *Grand Trunk Ry. Co. of Canada*, 39 F. 255) and a New York Superior Court case of 1883 (*Hinchy* v. *Manhattan Railway Co.*, 17 Jones & Sp. [49 Super. Ct.] 406) for that proposition. However, later New York cases have held that a person has a right to take prudent measures to protect his own property from further damage provided he exercises reasonable care for his own safety in so doing. (*Rague* v. *Staten Island Coach Co.*, 288 N. Y. 206, 210; *Wardrop* v. *Santi Moving & Express Co.*, 233 N. Y. 227, 229.) Although plaintiff was not protecting his own property in trying to put out the fire, he was trying to put out a fire which he thought he might have started. Plaintiff was not a volunteer in the same sense as was the plaintiff in the Pike case, who tried to put out a fire she had nothing to do with starting and which did not threaten her property. Although there is testimony that plaintiff left the torch upright when he went down the street and

that it was on its side when he returned, the torch may have fallen over again because not properly set up, in which case there would be nothing to break the chain of causation.

A jury could find that the chain of causation was not broken by any intervening agency. The fire may have been, and probably was, caused by the acts of the two boys in kicking over the torch. The probable result was that the boys would try to put it out. In the cases cited by respondent the accident occurred after the dangerous instrumentality had been removed to another location by other children. (*Perry* v. *Rochester Lime Co.*, 219 N. Y. 60; *Hall* v. *New York Telephone Co.*, 214 N. Y. 49; *Beetz* v. *City of Brooklyn,* 10 App. Div. 382.) Here the only thing that intervened between plaintiff's original act in playing with the torch and the accident was a period of time during which plaintiff walked down the street. There is no evidence that anyone else interferred with the torch. If the jury found that defendant was negligent in maintaining the torch, it could also find that the natural and probable consequences of that act were that a child such as plaintiff would play with it, might attempt to put out a fire caused by his play and would thus be injured.

The judgments should be reversed and a new trial granted.