■ HAROLD HAYES, Respondent, v. PAUL MALKAN, Defendant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant.— Judgment of the Supreme Court, Richmond County, dated July 26, 1967, reversed, on the law and the facts, and new trial granted, with costs to abide the event, unless

plaintiff, within 30 days after entry of the order hereon, serve and file in the office of the clerk of the trial court a written stipulation consenting to reduce the verdict in his favor from $260,000 to $155,000, to reduce accordingly the amount of interest thereon, and to the entry of an amended judgment accordingly, in which event the judgment, as so reduced and modified, is affirmed, without costs. On May 8, 1961, at approximately 11:30 P. M., an automobile owned and operated by defendant Malkan, while proceeding north on Manor Road in Staten Island, struck a utility pole owned, erected and maintained by appellant (Con Ed). Plaintiff, one of three passengers, was riding in the front seat, and was thrown out the right front door of the car. He brought this action to recover for personal injuries sustained thereby. His action against Malkan was settled for $10,000 prior to the trial, leaving only the claim of negligence on the part of Con Ed for disposition. The pole was installed in 1929. As to the width of the paved portion of Manor Road, the evidence is that in 1921 it was 16 feet and by 1935 it had been increased to 18 feet. A 1941 map shows four-foot wide granite block gutters to have been added on each side. The gutters were subsequently paved over; and along their outside edges were installed granite block headers. The headers were variously described as being between 1½ to 4 inches in height. The pole, sloped slightly toward the roadway and surrounded by "heavy growth", was variously described as from 6 to 8 inches behind the header on the east side of the road. As of 1961, the New York City Department of Water Supply, Gas and Electricity required new utility poles to be placed at least 18 inches back from the curb; but, although it had authority to do so, it never ordered Con Ed to move the pole in question farther back. However, Con Ed could have done so on its own initiative, without prior authorization by the Department. On the night of the accident it was raining and there were numerous holes in the road surface. Plaintiff was asleep at the time he was precipitated from the automobile and he had no idea what had caused the door to open. There was testimony that the door was defective, to the extent that it would " get loose on the catch and rattle a little "; however, the door had never actually opened by itself. Plaintiff tried the case on the theory that the door opened as a result of the impact caused by the collision between the door (closed) and the pole; and, in our opinion, the evidence was sufficient to support the jury's apparent finding that the accident did, in fact, occur in this manner. A public utility which maintains a pole so close to the traveled portion of the highway as to constitute a danger to highway users is negligent (*McGettigan* v. *New York Cent. R. R. Co.*, 268 N. Y. 66; *Stern* v. *International Ry. Co.*, 220 N. Y. 284); and it is generally for the jury to decide whether the location of the pole constituted a danger to highway users under the particular circumstances involved (see PJI 2:201). As was stated in Prosser, Law of Torts (2d ed.), "The status of a user of the highway has been extended to those who stray a few feet from it inadvertently or in an emergency" (p. 429). This statement was cited with approval in *Meil* v. *Syracuse Constructors* (19 A D 2d 10, 13). Although a pole may have been safely located at the time of its erection, the owner and maintainer thereof is subject to liability if, due to changes in conditions and circumstances, the pole thereafter becomes dangerous while standing in its original position (*Clawson* v. *Central Hudson Gas & Elec. Corp.*, 298 N. Y. 291; *Koehler* v. *City of New York*, 262 N. Y. 74; *Stern* v. *International Ry. Co.*, *supra*); and it matters not that the pole was originally erected pursuant to a permit, or that the maintainer thereof was never ordered to move it (*McGettigan* v. *New York Cent. R. R. Co.*, *supra*; *Stern* v. *International Ry. Co.*, *supra*). In our opinion, the question of negligence was for the jury to decide; and, upon the evidence adduced, the jury could reasonably have found that this pole, which was located

merely about 7 inches from the pavement's edge, obscured by foliage and " protected " only by a two-inch header, which the jury could have found to have been covered with debris, making it possible for even a prudent driver to mount it inadvertently on a dark and rainy night, constituted an unreasonable hazard to users of the highway. Upon the record before us, we cannot say that Con Ed was free of negligence as a matter of law (cf. *Trabisco* v. *City of New York,* 280 N. Y. 776). The cases of *Darling* v. *State of New York* (16 N Y 2d 907), *Ellis* v. *State of New York* (16 A D 2d 727, affd. 12 N Y 2d 770) and *Kinne* v. *State of New York* (8 A D 2d 903, affd. 8 N Y 2d 1068), relied on by Con Ed and the dissenting Justices herein, are clearly distinguishable. In those cases, the objects collided with were 4 feet 3 inches, 5 feet 10 inches and 3 feet, respectively, from the payment's edge. Moreover, those cases turned upon findings that the collisions therein were proximately caused by negligent operation of the automobiles involved. In the case at bar, there is no evidence whatever that Malkan operated his vehicle in a negligent manner. Additionally, *Kinne* deals with a special problem: the duty of the State to remove trees (natural obstacles) from the area surrounding State highways; whereas the instant case involves the extent of the responsibility of one who creates an artificial obstacle. Clearly, the duty to reset a utility pole, which serves no esthetic purpose and has become dangerous subsequent to its erection, is not as onerous a burden as to require the State to remove all trees from areas surrounding State highways. In short, we are of the opinion that the instant case is governed by the result reached in *Trabisco* v. *City of New York* (*supra*). However, upon the entire record, we are of the opinion that the verdict is excessive to the extent indicated. Christ, Acting P. J., Benjamin and Martuscello, JJ., concur; Brennan and Munder, JJ., dissent and vote to reverse the judgment and dismiss the complaint, with the following memorandum: Manor Road, originally 16 feet wide, had been widened to 18 feet. Thereafter, 4-foot wide granite block gutters were added to each side of it and were subsequently paved over so that the total width of the paved portion of the roadway was 26 feet at the time and place of the accident. Granite block headers had been installed and there were cracks running north and south in the roadway about 4 feet in from the headers which indicated where the gutters were. These headers varied in height from 1½ to 4 inches (they were 3 inches high at the pole) and effectively formed a curb delimiting the roadway. The New York City Department of Water Supply, Gas and Electricity has since 1961 required that *new* utility poles be placed 18 inches back from the curb, but it has never ordered Con Ed to move its *existing* poles. To require Con Ed to voluntarily move its existing poles upon the widening of every highway would, we believe, impose an intolerable burden on it (cf. *Kinne* v. *State of New York,* 8 A D 2d 903, affd. 8 N Y 2d 1068). As the majority point out, it was raining on the night of the accident and there were numerous holes in the roadway. There was testimony that the right front door of the car was defective. There was also evidence to the effect that defendant Malkan had been driving in a careless manner. Plaintiff testified that he was asleep at the time he was precipitated from the automobile and had no idea what had caused the door to open, but in his verified bill of particulars as to his cause of action against defendant Malkan which was settled for $10,000 before this trial, plaintiff alleged that the accident was caused solely by the negligence of Malkan in that the latter drove at an excessive and improper rate of speed, in the existing conditions, with the door lock in a defective and dangerous condition to his knowledge, without warning plaintiff, and that he failed to keep his automobile under proper control but drove so recklessly, carelessly and dangerously as to cause it to leave the highway and strike the pole. There were no other cars moving on the road, and Malkan did not pass

any parked cars. There was no emergency that caused him to go off the road. The pole was not on a shoulder of the road; it was completely off the road. Assuming that the accident happened in the manner most favorable to plaintiff's case, that the car door was caused to open when it came into contact with the pole, the only evidence upon which negligence on the part of Con Ed can be predicated is in the location and maintenance of its pole (*Van Wie v. City of Mt. Vernon*, 26 App. Div. 330). The company must locate its poles so that they will not unreasonably or unnecessarily interfere with or endanger the users of the public highway (*Bailey v. Bell Tel. Co. of Buffalo*, 147 App. Div. 224). As presented by Judge CARDOZO in *Stern v. International Ry. Co*. (220 N. Y. 284, 291), " The question is whether the place chosen is so dangerous and the danger so needless that the choice becomes unreasonable." " It is well settled that proof of prior accidents may be received to demonstrate that a condition is dangerous or that a defendant had notice thereof " (*Kaplan v. City of New York*, 6 A D 2d 489, 491; and cases therein cited). In its 32 years of existence there is no record of this pole having been previously struck. Here the proof does not establish the existence of an unreasonably dangerous condition or of any act or omission on the part of Con Ed that was the proximate cause of the accident. In our opinion there was provided an unobstructed paved portion of highway reasonably adequate to accommodate traffic; and the location of the utility pole with respect thereto as a matter of law did not constitute negligence. It is our opinion that the proximate producing cause of the accident was the condition of the automobile and the manner in which it was being operated at the time of the accident, and not the location of the utility pole (*Darling v. State of New York*, 16 N Y 2d 907; *Ellis v. State of New York*, 16 A D 2d 727, affd. 12 N Y 2d 770; *Kinne v. State of New York*, 8 A D 2d 903, affd. 8 N Y 2d 1068).