Chief Judge Fuld (dissenting).
I cannot agree with the court’s conclusion that a public utility may, with impunity, erect and maintain a pole dangerously close to a public highway simply because it does so on land which" happens to be owned by a third party. The emphasis placed by the court on the property rights of a private landowner completely ignores the safety of the traveling public and allows the careful user of the highway to be placed in danger without any countervailing justification.
In the case before us, the plaintiff was seriously injured when the automobile in which he was a passenger struck a utility pole, owned and maintained by the defendant Consolidated Edison Company (Con Ed), which was located but a mere seven inches off the traveled portion of the road. Finding that the pole was so close to the highway as to create an unreasonable hazard to the traveling public, the jury returned a verdict in favor of the plaintiff.[1] The court, however, is reversing the judgment and dismissing the complaint on the sole ground that the pole was on private property.
We have frequently held that a party who places a pole, or some other obstruction, dangerously close to a public highway may be held liable in negligence for injuries to users of the highway which may result therefrom. (See, e.g., Trabisco v. City of New York, 280 N. Y. 776; Toomey v. Western Union *301 Tel. Co., 279 N. Y. 600; Koehler v. City of New York, 262 N. Y. 74, 77; Stern v. International Ry. Co., 220 N. Y. 284, 291; Lambert v. Westchester Elec. R. R. Co., 191 N. Y. 248, 251.) Almost precisely in point is the Trabisco case (280 N. Y. 776, supra), in which we held that the maintenance of a utility pole a foot and a half from the edge of the pavement gave rise to a jury question as to whether it constituted an unreasonable hazard to passersby. I do not believe that Trabisco or the other decisions cited above may be distinguished on the ground — suggested by the majority (opn., p. 298)—that the obstruction in each of those cases was “ within the highway right of way”. This may well have been the situation in those cases but it is significant that in no one of them did the court treat as relevant, or even make mention of, the ownership of the land on which the pole stood. The' single fact consistently regarded as operative is that the defendant had placed the object in an unreasonably dangerous spot.
Be that as it may, it is now urged that the defendant should be considered as a private landowner whose right to use his land would be unduly restricted by the imposition of a duty to travelers on the abutting highway. It seems strange to me to accord this defendant a privilege which it would otherwise lack simply because —■ so far as appears from the record before us—it had trespassed onto someone else’s property in erecting its pole. However, even assuming that it is proper to treat the defendant as if it owned the land, I do not believe that that circumstance is sufficient to enable it to maintain its poles without regard to the danger thereby occasioned the public.
No one will, or should, dispute the proposition that one may not use his land in disregard of the rights of others. Sic utere tuo ut alienum non laedas is a maxim reflecting a truism having its origin in the ancient common law. Indeed, as Judge Cardozo noted in Hynes v. New York Cent. R. R. Co. (231 N. Y. 229, 235), although landowners are not bound to regulate their conduct in contemplation of trespassers intruding upon private structures, such “ [1] andowners are bound to regulate their conduct in contemplation of the presence of travelers upon the adjacent public ways.” (See, also, Prosser, Law of Torts [3d ed., 1964], § 57, pp. 359-360; 2 Harper & James, Law of Torts [1956], § 27.4, p. 1445; Restatement, 2d, Torts, § 368, pp. *302 268-271.) This duty is nothing more or less, as Prosser put it {loo. cit.), than a concomitant of the “ obligation [imposed] upon the occupiers of abutting land to use reasonable care to see that * * * passage [on the highway] is safe” and, added Prosser, “ [t]he status of a user of the highway has been extended to those who stray a few feet from it inadvertently.” Even more explicit and pointed is the Restatement’s black letter declaration (Restatement, 2d, Torts, § 368, p. 268):
“A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm hereby caused to persons who
“ (a) are traveling on the highway, or
“ (b) foreseeably deviate from it in the ordinary course of travel.” (Emphasis supplied.)
The courts of this State have long recognized the obligation of an abutting landowner. It has been held in a number of cases that one who, for instance, maintains an excavation on his land, so close to the highway that a pedestrian making a mis-step falls into it, is liable for the injuries caused. (See, e.g., Friedel v. Coffin, 214 N. Y. 698; Beck v. Carter, 68 N. Y. 283, 291; Kelly v. Sabin Estates, 279 App. Div. 348, 349; Thompson v. New York Cent. & Hudson Riv. R. R. Co., 41 App. Div. 78, 81.) To be educed from these decisions is the principle that, “ although an owner whose land abuts upon a highway is not liable to a trespasser, he may nevertheless be answerable for maintaining a dangerous condition so close to the public thoroughfare that a traveler is injured by a slight and inadvertent deviation ”. (Kelly v. Sabin Estates, 279 App. Div. 348, 349, supra.) These cases, it is true, deal with pedestrians and not with motorists but it may not be reasonably suggested that a property owner owes less of a duty to motorists than he does to pedestrians. It is perfectly apparent that a greater need exists to protect the motorist from poles or other conditions maintained by the owner just off the traveled portiohf of the *303 road not only because of the automobile’s greater speed but also because of the driver’s reduced visibility and shorter reaction time.
The pole in the present case, but seven inches from the highway, was so close to its traveled portion that the jury was certainly warranted in finding that it was a danger to moving automobiles. What difference if the pole was on private property rather than public land? In either case, it was clearly foreseeable that a car might swerve a few inches from the roadway, even though the man at the wheel was driving carefully. Not even the owner of the land — much less a utility company on another’s property—should be privileged to maintain a pole so near the road that a miniscule deviation, a millisecond of inadvertence by the driver, would cause a car to strike it.
It does not follow, as the majority suggests (opn., p. 299), that to allow a recovery in this case would “ require a landowner to remove every tree, fence, post, mailbox or name sign located on his property in the vicinity of the highway ”. There are substantial differences between a utility pole and, for example, a mailbox or a name sign. In each case, the jury must determine whether it was reasonable to place the particular object involved, having in mind its nature and purpose, at the spot where it was being maintained. There may be good and sound reasons for constructing an item such as a mailbox close to the highway but neither Con Ed nor anyone else claims that a utility pole would not be able to fulfill its function equally well if it were located seven feet, instead of seven inches, from the highway.
Since, then, the jury found that Con Ed’s pole created a dangerous condition to oncoming automobiles, it should be held liable to the plaintiff for injuries suffered, even if that pole happened to be on another person’s private property. I would affirm the judgment in favor of the plaintiff.
Judges Scileppi, Bergan and Breitel concur with Judge Jasen; Chief Judge Fuld dissents and votes to affirm in a separate opinion in which Judges Burke and Gibson concur.
Judgment reversed, without costs, and the complaint dismissed.

. The jury’s verdict of $260,000 was reduced by the Appellate Division to $155,000.